

FEE PAID

Daniel E. Davis
P.O. Box 3
Devils Tower, WY 82714
(610) 570-2189
Plaintiff *Pro Se*

Peter Conti
5205 Hollywood Blvd.
Los Angeles, CA 90027
(646) 942-1065
Plaintiff *Pro Se*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL E. DAVIS and PETER CONTI, | CV21-2090-JVS (JDEx) |
| Plaintiffs, | Civ. No. ____ |
| v. | |
| AMAZON.COM, INC., AMAZON STUDIOS, LLC d/b/a AMAZON STUDIOS, BLUE TONGUE FILMS, DENVER AND DELILAH PRODUCTIONS, A.J. DIX, NASH EDGERTON, EROS INTERNATIONAL MEDIA LTD., TRISH HOFFMAN, BETH KONO, MATTHEW STONE, ANTHONY TAMBAKIS, CHARLIZE THERON and REBECCA YELDHAM, | **COMPLAINT** <br><br> Plaintiffs Demand A Jury Trial |
| Defendants. | |

Plaintiffs Daniel E. Davis ("DAVIS") and Peter Conti ("CONTI"), each appearing *pro se*, for their Complaint herein, allege as follows:

### The Nature of the Action

1. This is an action for violation of the Lanham Act, 15 U.S.C., Sections 1051 et seq.

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331.

3. Venue is proper in this district, pursuant to 28 U.S.C. Section 1391(b)(2) and/or (b)(3).

## The Parties

4. Plaintiff DAVIS is an individual residing in the State of Wyoming. He is the co-author and subject of the book entitled "GRINGO," first published in November, 2016. DAVIS owns the copyright and 75% of all other property interests relating to the book.

5. Plaintiff CONTI is an individual residing in the State of California. Along with DAVIS, he is the co-author of the book "GRINGO," and he owns 25% of the property interests in the book other than the copyright.

6. Defendant Amazon.com, Inc. ("AMAZON") is a publicly traded multinational conglomerate with its principal place of business in Seattle, Washington.

7. Defendant Amazon Studios, LLC, d/b/a Amazon Studios ("AMAZON STUDIOS"), is a television and film producer and distributor wholly owned by AMAZON with its principal place of business in Culver City, California. AMAZON was the co-distributor of a film entitled "GRINGO."

8. Defendant Blue Tongue Films ("BLUE TONGUE") is a film collective and production company with its principal place of business in Sydney, Australia. It was one of two production companies for the film entitled "GRINGO."

9. Defendant Denver and Delilah Productions ("DENVER AND DELILAH") is a film production company based in Los Angeles, California. DENVER AND DELILAH was one of two production companies for the film entitled "GRINGO."

10. Defendant A. J. Dix ("DIX") is an individual who, upon information and belief, resides in Chicago, Illinois. DIX was a co-producer of the film entitled "GRINGO."

11. Defendant Nash Edgerton ("EDGERTON") is an individual who, upon information and belief, resides in Sydney, Australia. EDGERTON is a founding member of defendant BLUE TONGUE and was himself a co-producer of the film entitled "GRINGO."

12. Defendant EROS INTERNATIONAL MEDIA LTD., d/b/a EROS INTERNATIONAL ("EROS"), is a film production company listed on the New York Stock Exchange with its principal place of business in Mumbai, India. EROS is the successor in interest to STX Entertainment, Inc. and STX Films, formerly a division of STX Entertainment and a co-distributor of the film entitled "GRINGO."

13. Defendant Trish Hoffman ("HOFFMAN") is an individual who, upon information and belief, resides in Los Angeles, California. HOFFMAN was an executive producer of the film entitled "GRINGO."

14. Defendant Beth Kono ("KONO") is an individual who, upon information and belief, resides in Los Angeles, California. KONO is a founding principal of the defendant DENVER AND DELILAH and was herself a co-producer of the film entitled "GRINGO."

15. Defendant Matthew Stone (STONE") is an individual who, upon information and belief, resides in Los Angeles, California. STONE was an executive producer of the film entitled "GRINGO."

16. Defendant Anthony Tambakis "(TAMBAKIS") is an individual who, upon information and belief, resides in Venice, California. TAMBAKIS was the principal screenwriter and a co-producer of the film entitled "GRINGO."

17. Defendant Charlize Theron ("THERON") is an individual who, upon information and belief, resides in Los Angeles, California. THERON is a founding principal of the defendant DENVER AND DELILAH and was herself a co-producer of the film entitled "GRINGO."

18. Defendant Rebecca Yeldham ("YELDHAM") is an individual who, upon information and belief, resides in Los Angeles, California. YELDHAM was a co-producer of the film entitled "GRINGO."

## COUNT ONE
### (For Violation of the Lanham Act)

19. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 18 as if fully stated herein.

20. Plaintiffs published their book "GRINGO" in November 2016, about five years after DAVIS began writing the book, in prison. It is a first-hand account of DAVIS's 13 years as a fugitive after fleeing to Mexico to avoid imprisonment in the U.S. for a drug conviction. DAVIS had gained some notoriety for inventing and legally distributing a unique ephedrine, or "speed," pill called "White Crosses" but was then wrongly convicted on a marijuana charge for which he was "set up" by a "cooperating" drug dealer. Much of the book focuses on DAVIS's challenges in avoiding capture by the Mexican federales and kidnapping by the drug cartels.

21. Upon its publication, the book immediately became an Amazon #1 Bestseller among "Hot New Releases," and it has remained a Bestseller to this day in various Amazon categories. In 2017 DAVIS was engaged in discussions with various parties showing an interest in the movie rights to the book.

22. In or about 2014, various of the defendants began production of a film about an American who goes to Mexico to "legally" distribute a unique marijuana pill and is then kidnapped by a drug cartel. The film's working title was "American Express." However, when

4

the film was released, on March 9, 2018, its title had been changed to "GRINGO," with a font that resembled that of the book title.

23. Upon information and belief, prior to releasing their film, Defendants became aware of Plaintiffs' book and its success and determined that "GRINGO" was a better title for their film.

24. Defendants have used the trademark "GRINGO" as the title for their film without Plaintiffs' authorization. The film was widely distributed to and exhibited in theaters with this unauthorized use of the mark and has since been streamed and prominently featured by AMAZON on its its subscription and video-on-demand service Amazon Prime Video.

25. The title "Gringo" is a trademark that, since 2016, Plaintiffs have used in connection with the sale and marketing of their book by the same name. Defendants' unauthorized use of this trademark for their film has caused and continues to cause a substantial likelihood of confusion in the marketplace and actual confusion in the marketplace as to whether the film is an adaptation of the book. There is a widespread and natural assumption that it is.

26. This confusion has been created by, *inter alia*, (a) Defendants' release of their film with the same title shortly after the publication of Plaintiffs' book, (b) Defendants' use of a font for the title of their film very similar to the font used by Plaintiff's in the title of their book, and (c) the commonality of various elements in the book and the film, including, *inter alia*, the central theme of an American who was "set up" to take the fall on a drug deal and is out of his element in Mexico when he is chased by federales and kidnapped by a drug cartel.

27. As a direct result of this confusion and Defendants' misappropriation of the trademark, Plaintiffs have lost the opportunity to sell the film rights to their book. There is the perception in the public and in the industry that the book has already been adapted to a film. Parties that had been interested in the film rights to the book prior to the release of the film

immediately lost interest, and because of the continuing confusion, Plaintiffs have not been able to revive that interest.

28. The confusion caused by Defendants' misappropriation of the trademark has not only prevented Plaintiffs from selling the film rights to their book but has hurt sales of the book itself. Persons who have seen the the film forego purchasing the book, because they mistakenly believe they've already seen the story in the film. To make matters worse, the film has been a critical failure. Potential buyers of the book associate the title and subject matter with Defendants' unappealing film and eschew the book.

29. By reason of the foregoing, Defendants' have repeatedly violated the Lanham Act.

30. As a direct result of the foregoing, Plaintiffs have suffered substantial damages in an amount to be determined at trial.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Damages in an amount to be determined at trial,

B. Pre-judgement and post-judgment interest,

C. Costs and

D. Such other and further relief as the Court deems just and proper.

Dated: March 1, 2021

Daniel E. Davis, Plaintiff *Pro Se*

Peter Conti, Plaintiff *Pro Se*

6