1  Jonah A. Grossbardt (SBN 283584)
2  Matthew L. Rollin (SBN 332631)
   **SRIPLAW**
3  8730 Wilshire Boulevard
   Suite 350
4  Beverly Hills, California 90211
5  323.364.6565 – Telephone
   561.404.4353 – Facsimile
6  jonah.grossbardt@sriplaw.com
7  matthew.rollin@sriplaw.com

8
9  John A. Squires (*Pro Hac Vice* Pending)
   Spencer Dreier (*Pro Hac Vice*)
10 **Dilworth Paxson LLP**
11 99 Park Avenue
   Suite 320
12 New York, NY 10016
13 917.675.4251 – Telephone
   215.575.7200 – Facsimile
14 jsquires@dilworthlaw.com
15 sdreier@dilworthlaw.com

16
17 Attorneys for Plaintiffs
   DANIEL E. DAVIS,
18 PETER CONTI,
   AND GRINGO HOLDINGS, LLC
19

20              **UNITED STATES DISTRICT COURT**

21              **CENTRAL DISTRICT OF CALIFORNIA**

22

23 DANIEL E. DAVIS, PETER CONTI,          Case No.:  2:21-cv-02090-JVS
   AND GRINGO HOLDINGS, LLC,              (JDEx)
24
25                          Plaintiffs,

26 v.                                     **PLAINTIFFS' MEMORANDUM**
                                          **OF POINTS AND AUTHORITIES**
27                                        **IN OPPOSITION TO MOTION**
28 BLUE TONGUE FILMS, DENVER              **TO DISMISS**
   AND DELILAH PRODUCTIONS, A.J.

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**SRIPLAW**

i

DIX, NASH EDGERTON, EROS
INTERNATIONAL MEDIA, LTD.,
TRISH HOFMANN, BETH KONO,
MATTHEW STONE, ANTHONY
TAMBAKIS, CHARLIZE THERON
and REBECCA YELDHAM,

Defendants.

**Judge: Hon. James V. Selna**

**Date: December 20, 2021**
**Time: 1:30 PM**
**Courtroom: Santa Ana, 10C**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

OPPOSITION TO MOTION TO DISMISS                    CASE NO.:  2:21-cv-02090-JVS (JDEx)

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................. 1

II. FACTUAL BACKGROUND ..................................................... 2

III. LEGAL STANDARD ............................................................ 3

IV. ARGUMENT ...................................................................... 3

    A.    Plaintiffs Have Alleged A Valid And Protectable Trademark,

        Because The "GRINGO" Title Has Acquired Secondary Meaning … 3

      1.  Plaintiffs Have Adequately Alleged Likelihood of Confusion,

         Which Defendants Do Not Dispute ……..……………………………… 6

    B.   The First Amendment Does Not Entitle Defendants To Use

       A Confusingly Similar and Trademarked Book Title For Their

       Movie Title And Does Not Entitle Defendants To Use Any Mark

       With Intent To Mislead Consumers ........................................ 10

     1.  The *Rogers* Test Does Not Apply To Cases of Two Confusingly

        Similar Titles In Two Expressive Works, Particularly Where

        Defendants Intended To Mislead Consumers .......................... 10

     2.  If *Rogers* Does Apply, Plaintiffs Satisfy Prong Two of The Test,

        Because They Allege Defendants Used Plaintiffs' Mark To

        Intentionally Confuse and Mislead Consumers And Used It In The

        Same Way as Plaintiffs, Without Any Modification .............................. 15

         (a) Defendants Used Plaintiffs' Mark In The

            Very Same Way As Plaintiffs ...................................... 16

         (b) Defendants Used Plaintiffs' Mark As The Title of Their

            Movie without Any Change To Its Text Or Any Adornment

            Or Modification ................................................................ 18

         (c) Defendants Used Plaintiffs' Mark To

            Intentionally Confuse And Mislead Consumers .......................... 20

1

C.  Plaintiffs Have Adequately Pled Their UCL Claim ................................. 23

2

D.  Plaintiffs Have Not Engaged In Impermissible Group Pleading ............ 24

3

**V. CONCLUSION ............................................................................................. 25**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Academy of Motion Picture Arts and Sciences v. Creative House
     Production, Inc.,
     994 F. 2d 1446 (9th Cir. 1991) …………………………………….. 6, 8

American Ass'n for Advancement of Science v. Hearst Corp.,
     498 F. Supp. 244 (D.D.C. 1980) ………………………………………… 5

AMF, Inc. v. Sleekcraft Boats,
     599 F. 2d 341 (9th Cir. 1979) ……………………………………… 7, 8, 9, 19

Arrowhead Indem. Co. v. Ins. Co. Penn.,
     102 F. Supp. 1141 (C.D. Cal 2012) ………………………………………… 3

CI Games v. Destination Films,
     No. 2: 16-v-05719-SVW-JC,
     2016 WL 9185391 (C.D. Cal. Oct. 25, 2016) …………………… 7, 12, 20, 21

Dita, Inc. v. Mendez,
     No. CV 10-6277 PSG (FMOx)
     2010 WL 5140855 (C.D. Cal. Dec. 14, 2010) …………………….. 10, 21, 23

Dr. Seuss Enterprises, L.P. V. ComicMix, LLC,
     983 F. 3d 443 (9th Cir. 2020) ………………………………………… 12, 19

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1   Electronic Arts, Inc. v. Textron, Inc.,
2       No. CV 12-00118 (WHA),
3       2012 WL 3042668 (N.D. Cal. July 25, 2012) …………………………… 22
4
5   Gordon v. Drape Creative, Inc.,
6        909 F. 3d 257 (9th Cir. 2018) ……………………………………16, 17, 18, 20
7
8   Herbko Int'l, Inc. v. Kappa Books, Inc.,
9       308 F. 3d 1156 (Fed. Cir. 2002) ……………………………………… 3, 4
10
11  Hofheinz v. A.V.E.L.A., Inc.,
12      2013 WL 12306480 (C.D. Cal. Aug. 21, 2013) ………………..……….. 4
13
14  Kendall-Jackson Winery Ltd. v. E & J Gallo Winery,
15      150 F. 3d 1042 (9th Cir. 1998) ……………………………………….. 3
16  Kiedis v. Showtime Network, Inc.,
17      No. CV 07-8185 (DSF) (MANx),
18      2008 WL 11173143 (C. D. Cal. Feb. 19, 2008) ……………………… 9, 11
19
20  Mattel, Inc. v. MCA Records, Inc.,
21      296 F. 3d 894 (9th Cir. 2002) ……………………………………… 10, 14
22
23  Morgan Creek Productions, Inc. v. Capital Cities / ABC, Inc.,
24      No. CV - 89-5463-RSWL (JRx),
25      1991 WL 352619 (C.D. Cal. Oct.28,1991) ………………………… 4, 7, 12, 13
26
27  People ex. Rel. Lockyer v. Fremont Life Ins. Co.,
28      104 Cal. App. 4th 508, 128 Cal. Rptr. 2d 467 (2002) ……………….....… 23

OPPOSITION TO MOTION TO DISMISS                    CASE NO.:  2:21-CV-02090-JVS (JDEx)

Punchbowl, Inc. v. AJ Press, LLC,
   2:21-cv-03010-SVW-MAR,
   2021 WL 3356848 (C.D. Cal. July 16, 2021) …………………...…… 19

Randall v. Sorrel,
   548 U.S. 230 (2006) …………..……………………………………… 14

Rearden LLC v. Reardon Commerce, Inc.,
   683 F.3d 1190 (9th Cir. 2012) ……………………………………… 9

Retail Prop. Trust v. United Bhd. of Carpenters,
   768 F. 3d 938 9th Cir. 2014) …………………………………………. 3

Rogers v. Grimaldi,
   875 F. 2d 994 (2d Cir. 1989) ………………………..…….. 3, 10, 13, 16

Shroyer v. New Cingular Wireless Servs., Inc.,
   606 F. 3d 1035 (9th Cir. 2010) …………………………………… 23

Swoben v. United Healthcare,
   848 F.3d 1161 (9th Cir. 2016) …………………………...…… 24, 25

Twentieth Century Fox Television v. Empire Distrib., Inc.,
   875 F. 3d 1192 (9th Cir. 2017) …………………………………… 12

Winchester Mystery House, LLC v. Global Asylum, Inc.,
   210 Cal. App. 4th 579 594 (2012) …………………………….…... 24

OPPOSITION TO MOTION TO DISMISS                                    CASE NO.:  2:21-CV-02090-JVS (JDEx)

**Statutes**

15 U.S.C. Section 1125 ……………………………………………………1, 6

Cal. Bus. & Prof. Code Section 17200 ………………………………….. 1, 23

**Regulations**

C.F.R. Section 2:41(a) ………………………………………………… 5

**Other Authorities**

Trademark Manual of Examining Procedure (July 2021 ed.) ……………….…. 4

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## I.  INTRODUCTION

Plaintiffs Daniel E. Davis ("Davis"), Peter Conti ("Conti") and Gringo Holdings, LLC (collectively, "Plaintiffs") respectfully submit this Memorandum of Points and Authorities in opposition to Defendants' Motion to Dismiss the First Amended Complaint ("Comp."), which asserts claims for trademark infringement under Section 1125(a) of the Lanham Act and unfair competition under Section 17200 of the California unfair competition law (the "UCL").

Defendants predicate their Motion on four theories: (1) Plaintiffs' supposed failure to establish a valid trademark, (2) Defendants' supposed entitlement to First Amendment protection in their use of Plaintiffs' mark, (3) Plaintiffs' supposedly impermissible group pleading, and (4) Plaintiffs' supposed failure to adequately plead loss causation or anti-competitive conduct under the UCL.

However, as set forth and supported herein, Defendants' Motion must be denied, because (1) Plaintiffs have adequately alleged a valid trademark in their book title "GRINGO" by reason of its having acquired secondary meaning among a substantial segment of consumers; (2) there is no First Amendment protection for use of a title in an expressive work that is "confusingly similar" to a trademarked title in another expressive work, particularly when Defendants used the title to intentionally confuse and mislead consumers as to the source of the infringing work; (3) it is not impermissible "group pleading" where it is alleged that all Defendants, by reason of their having the same titles and positions in a common enterprise, were responsible for the same wrongdoing that cannot and therefore need not be differentiated at the pleading stage; and (4) Plaintiffs have adequately and specifically alleged losses that resulted "directly" from Defendants' violation of the UCL and a Lanham Act violation as the proper predicate for their UCL claim.

## II.  FACTUAL BACKGROUND

Plaintiffs Davis and Conti are the co-authors of a book entitled "GRINGO" (the "Book"). (Comp.¶¶ 4-5).  The Book is a first-hand account of Davis' 13 years as an

SRILAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

American fugitive after fleeing to Mexico to avoid imprisonment on a drug conviction for which he was "set up" by a "friend." (Id. ¶¶ 4-5, 19). The Book focuses on Davis' challenges and adventures in adjusting to life on the run south of the border, where he is out of his element and, among other things, kidnapped by a cartel. (Id. ¶ 19). Upon its publication in November 2016, the Book was favorably reviewed in many publications and immediately became an Amazon #1 Bestseller. (Id. ¶¶ 18, 20).

Defendants are the producers and distributor of a movie also entitled "GRINGO" (the "Movie") (Comp. ¶¶ 7-17). The Movie, which was released about 16 months after the Book, is a fictional account of a Nigerian-American who goes to Mexico to sell what he believes to be a legal form of marijuana, only to be "set up" in an illegal scheme by his "friends." (Id. ¶ 24). Like the Book, the Movie focuses on the protagonist adjusting to life on the run south of the border, where he is out of his element and kidnapped by a cartel.  (Id)

When production of the Movie began in 2014, its working title was "American Express," but before releasing it in March 2018 – as an Amazon Original Movie – after the Book had become a #1 Amazon Bestseller – Defendants changed the title to "GRINGO," with a font all in capital letters, like Plaintiffs' mark, made to closely resemble the typeface of the Book title. Id. (¶¶ 25, 40). Below are exemplars of the "GRINGO" Book title and the "GRINGO" Movie title (Id ¶ 26):




Plaintiffs allege that Defendants' intention in retitling the Movie "GRINGO," without Plaintiffs' authorization, was to confuse and mislead consumers as to a possible association between the Movie and Book. (Id. ¶¶ 27-29).

Predictably, upon the Movie's release, there was indeed widespread confusion among the public, within the film industry and with Amazon consumers in particular as to the relationship between the Book and the Movie. (Id. ¶¶ 28-29, 31, 41-43). There was and remains the mistaken assumption among many that the Movie is an adaptation of the Book. (Id ¶ 31). As a result, sales of the Book have suffered (among potential purchasers who mistakenly believe they have already seen the story of the Book in the Movie or have heard that the Movie was unappealing), and Plaintiffs have lost the opportunity to sell the movie rights to their Book. (Id ¶¶ 32-34).

## III. LEGAL STANDARD

It is well settled that a motion to dismiss must be denied if the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Arrowhead Indem. Co v. Ins. Co. Penn., 102 F. Supp. 1141, 1144 (C.D.Cal. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court "must draw all reasonable inferences in favor of the non-moving party." Retail Prop. Trust v. United Bhd. of Carpenters, 768 F.3d 938 (9th Cir. 2014).

## IV. ARGUMENT

**A.  Plaintiffs Have Alleged A Valid And Protectable Trademark,**
**Because The "GRINGO" Title Has Acquired Secondary Meaning**

While Plaintiffs have not registered "GRINGO" as a mark for their Book title (because titles of single works are not registrable), the Lanham Act nevertheless provides that "they may be protected under section 43(a) of the Lanham Act … upon a showing of secondary meaning" Herbko Int'l, Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1162 n.2 (Fed. Cir. 2002); see also Kendall-Jackson Winery Ltd. v. E & J Gallo

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1   Winery, 150 F.3d 1042, 1047 (9th Cir. 1998). A book title acquires secondary

2   meaning when the title "is sufficiently well known that consumers associate it with a

3   particular author's work." Rogers v Grimaldi, 875 F. 2d 994, 998 (2d Cir. 1989); see

4   also Morgan Creek Productions, Inc. v. Capital Cities/ABC, Inc., No. CV–89–5463–

5   RSWL(JRX), 1991 WL 352619 at * 7 (C.D.Cal. Oct. 28, 1991) ("A literary or artistic

6   title has acquired secondary meaning if, in the minds of a significant number of

7   people, the title is associated with a single source, even if the public does not know the

8   source by name."); see also Hofheinz v. A.V.E.L.A., Inc., 2013 WL 12306480 at *10-

9   11 (C.D.Cal. Aug. 21, 2013) (reasonable jury could find secondary meaning merely

10  from a showing that the film had been a "topic in various books and magazines").

11      The Court in Morgan Creek cited several relevant factors in determining

12  whether the title of an expressive work acquires secondary meaning, including the

13  extent of sales of the work, the extent of promotional activities for the work and the

14  extent of unsolicited media coverage of the work.  All of that is alleged here:

15      The Book had already achieved enough sales as of the time the Movie was

16  released to be an Amazon #1 Bestseller (and it remains a bestseller today in various

17  Amazon categories, including audiobooks). (Comp. ¶ 20). Davis actively promoted

18  the Book on a global tour before the Movie was released (and for a number of years

19  thereafter), and he is widely recognized by readers as its author. (Id. ¶22). From the

20  date of its publication, the Book has had extensive unsolicited media coverage, most

21  notably by way of many highly favorable reviews in major publications, including

22  The New York Times, The Chicago Tribune, USA TODAY, MSNBC, the London

23  Post, Kirkus Review, Manhattan Book Review, San Francisco Book Review, Portland

24  Book Review, Seattle Book Review and by more than 500 Amazon readers. (Id)

25      Notwithstanding the foregoing, Defendants contend that Plaintiffs fail to allege

26  secondary meaning, because, "as a rule, the authors of a single work cannot plead the

27  requisite distinctiveness," and because the mark "has not had five years of

28  substantially exclusive and continuous use." (Def. Mem. at 8:12, 10:9). But all of the

4

authorities cited in purported support of these contentions deal with registration. As shown above, Herbko itself (which defendants rely on), expressly states (at fn. 2) that "while titles of single works are not registrable, they may be protected under Section 43(a) of the Lanham Act upon a showing of secondary meaning." And the Trademark Manual of Examining Procedure (July 2021 ed.), which Defendants also rely on, states that showing five years of use is only one of several alternative for establishing secondary meaning and that a Lanham Act plaintiff can also establish secondary meaning by "other evidence that the mark has become distinctive." See also 37 C.F.R. Section 2.41(a). As shown above, Plaintiffs here allege such other evidence.'

In urging that Plaintiffs cannot show the requisite distinctiveness, Defendants ask the Court to take judicial notice of the purported fact that during the five years prior to publication of the Book, "there were several other books and movies bearing the GRINGO tile and similar themes as the Book" – but there is no legal requirement that Plaintiffs have used the title exclusively. It may be that the existence of such books or films would make it more difficult for Plaintiffs to prove distinctiveness for their title to have acquired secondary meaning, but this can hardly be determined on a motion to dismiss. This depends on evidence of sales, popularity, consumer recognition and content of those other works – matters of fact that can be judicially resolved only at trial or perhaps by summary judgment, but not at the pleading stage.

Defendants also contend that Plaintiffs have failed to allege secondary meaning, because "there are no allegations that a substantial segment of consumers and potential consumers associate the title 'GRINGO' with Plaintiffs." (Id. at 10:27-28). However, Defendants simply ignore the Plaintiffs' allegations that "the public," the "film industry," "consumers" and (by virtue of the Book's status as a #1 Amazon Best Seller) the entire "Amazon buyer class" in particular – a very large segment of consumers – associate the title "GRINGO" with the Book and/or Davis. (Comp. ¶ 20, 22, 27-29, 31-32, 39-43).   See also American Ass'n for Advancement of Science v. Hearst Corp., 498 F Supp. 244, 257 (D.D.C. 1980) ("The question is not whether the

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

general public but whether the relevant buyer class associates a name with a product or its source.  The general public need not be familiar with, nor even aware of, the existence of the product").

Finally, Plaintiffs resort to the routine default contention that the allegations of secondary meaning are too "generalized, vague and conclusory." (Def. Mem. at 9:16). To the contrary, as shown above, Plaintiffs specifically allege that the title of the Book has acquired secondary meaning by, *inter alia*, its longstanding listing as an Amazon #1 Bestseller (with the very substantial level of readership that represents), its frequent and favorable reviews in widely respected and specifically identified publications (as well as by many readers themselves), and the extensive promotion of the Book in a global book tour by Davis, who, as a result, is regularly recognized in public as the Book's author. Nothing more is required at the pleading stage to allege a valid mark.

### 1. *Plaintiffs Have Adequately Alleged Likelihood of Confusion, Which Defendants Do Not Dispute*

Defendants do not contend that Plaintiffs fail to adequately allege a likelihood of confusion resulting from their unauthorized use of Plaintiffs' mark. They concede this point by ignoring it and rely instead on the purported applicability of the "Rogers test." Nevertheless, the law leaves no doubt as to the sufficiency of this pleading as to likelihood of confusion, if the claim is ultimately assessed on that basis.

Section 43 of the Lanham Act, 15 U.S.C. 1125(a), "precludes the use of another's distinctive trademark [whether it is established by registration or secondary meaning] if [use] is likely to confuse the public as to the product's origin." Academy of Motion Picture Arts and Sciences, v. Creative House Promotions, Inc., 944 F.2d 1446, 1454 (9th Cir. 1991). "Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." Id. at 1454-55. The Court further states: "When one party knowingly adopts a mark similar to another's, reviewing courts presume that the defendant will

accomplish its purpose and that the public will be deceived. Thus, where evidence shows that one company deliberately adopted another's name to obtain advantage from the other's goodwill, we may infer a likelihood of confusion." Id. at 1156.

Here, Plaintiffs allege creating confusion among consumers was Defendants' very purpose in appropriating the title of Plaintiffs' Book for their Movie. That alone is sufficient to establish likelihood of confusion as a matter of Ninth Circuit law. Plaintiffs allege that Defendants had chosen another title for their Movie, "American Express," but when they observed the commercial success of Plaintiffs' Book, entitled "GRINGO" – especially with the Amazon buyer class to whom Defendants intended to market their Movie – they deliberately retitled their Movie "GRINGO" to lure in readers of the Book and "exploit the public recognition and commercial success of the Book and its imprimatur as an Amazon Bestseller." (Comp. ¶¶ 29, 25, 28, 41). Defendants' improper intent can be inferred from their adopting the "GRINGO" title for the Movie after the Book had already achieved success with that same title. See Morgan Creek, supra, at *8, ("The fact that [defendant] picked up 'The Young Riders' as a series and gave it its name *after* the tremendous success of [plaintiff's] 'Young Guns' could be construed as evidence of improper intent"). (Emphasis in original).

Beyond intent, the Ninth Circuit has articulated seven other non-exhaustive factors relevant to determining likelihood of confusion. AMF, Inc. v. Sleekcraft Boats, 599 F. 2d 341 (9th Circ. 1979). The allegations here also satisfy these other factors:

(i) Strength of the mark. Although the type of mark at issue here is not inherently a particularly strong mark, its actual strength has been demonstrated by the extraordinary popularity of the Book.

(ii) Proximity of the goods. "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." Id. at 350. "Goods are related where they are complementary, … sold to the same class of purchasers, … or similar in use and function." Id. Here, the Book and Movie are complementary, because both are in

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

the same sector, *i.e.,* media entertainment; both are primarily sold to the "Amazon buyer class"; and books are regularly adapted into movies based on their stories. See CI Games S.A. v. Destination Films, No. 2:16-cv-05719-SVW-JC, 2016 WL 9185391 at * 9 (C.D.Cal. Oct. 25, 2016) ("The title of a movie, if confusingly similar to the title of a video game series, absolutely would suggest to consumers that the producer of the video game is also the producer of the movie. As the Plaintiff notes in its Complaint, it is quite common for movies to be based on specific video games").

  (iii) <u>Similarity of the marks.</u> "Likelihood of confusion will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks." <u>Academy of Motion Pictures</u>, <u>supra</u>, at 1456. "Similarity of marks is tested on three levels: sight, sound and meaning." <u>Sleekcraft</u>, <u>supra</u>, at 351. Here, the marks used in the two "GRINGO" titles are visually virtually the same – they use the identical word, and, as is alleged (and self-evident), they both use all capital letters with a similar typeface.  (Comp. ¶¶ 26, 40). In <u>Sleekcraft</u>, where plaintiff's mark was "Slickcraft" and defendant's infringing mark was "Sleekcraft," the Court held that the "overall visual similarity" established likelihood of confusion. <u>Id</u>. The "GRINGO" Movie title here is not just similar, as in <u>Sleekcraft</u>,but identical, to Plaintiffs' "GRINGO" Book title.

  (iv) <u>Evidence of actual confusion.</u> "In this circuit, actual confusion is not necessary to finding a likelihood of confusion under the Lanham Act." <u>Academy of Motion Pictures</u>, <u>supra</u>, at 1456. Nevertheless, "evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." <u>Sleekcraft</u>, <u>supra</u>, at 352.  While, of course, "evidence" need not be put forth at the pleading stage, plausible allegations of such confusion suffice, and Plaintiffs have made such allegations here.  Plaintiffs have alleged that actual confusion among consumers is reflected in declining Book sales as a result of potential purchasers who saw the Movie and believed the Book would only repeat the story they already saw (and others who had heard or read the mostly poor reviews of the Movie and assumed

the Book would be the same). (Comp. ¶¶ 33-34). They have also alleged that actual confusion within the film industry is reflected by potential investors who were interested in the film rights to the Book prior to release of the Movie but lost interest after the Movie's release as a result of the widespread belief that the Movie was the adaptation of the Book. Comp. ¶ 32. Certainly more evidence of confusion can be developed through discovery, but these allegations suffice at the pleading stage.

(v) <u>Marketing channels.</u> "Convergent marketing channels increase the likelihood of confusion." <u>Sleekcraft</u>, <u>supra</u>, at 353.  That is exactly what Plaintiffs have alleged here. At the same time Plaintiffs have been marketing their Book primarily as "an Amazon Bestseller," Defendants have been marketing their Movie – "in the very same marketplace" to the very same "buyer class" – on Amazon Prime Video as an "Amazon Original Movie".  (Comp. ¶¶ 20, 27-29, 39-43).

(vi) <u>Type of goods and purchaser care.</u>  Given the fact that both the Book and the Movie are media entertainment products, and both have been primarily marketed as such particularly for Amazon consumers, they would likely be seen by prospective purchasers as related products, thereby adding to confusion as to their association.

(vii)  <u>Likelihood of expansion.</u> "A strong possibility that either party may expand his business to compete with the other [in the other's submarket] will weigh in favor of finding [a likelihood of confusion] and that the [junior user] is infringing." <u>Sleekcraft</u>, <u>supra</u>, at 353. This is a critical factor here.  The entertainment media field, e.g., books, movies and games, is typically linked for horizontal expansion. Plaintiffs allege they had specific plans for adapting their Book to a movie and had third party interest – until Defendants released their Movie with the same title and related theme.

Plaintiffs' foregoing allegations are sufficient, if taken as true, to establish a likelihood of confusion.  In any event, it is well settled that likelihood of confusion should not be resolved against a Lanham Act plaintiff at the pleading stage. <u>See, e.g.,</u> <u>Rearden LLC v. Rearden Commerce, Inc.,</u> 683 F.3d 1190, 1210 (9th Cir. 2012) ("careful assessment of the pertinent factors that go into determining likelihood of

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

confusion usually requires a full record."); <u>Kiedis v. Showtime Networks, Inc.</u>, CV 07-8185, 2008 WL 11173143 at *5 (C.D.Cal. Feb. 19, 2008) (likelihood of confusion as to two similar titles "is a factual issue not appropriate for resolution without examining the evidence."); <u>Dita, Inc. v. Mendez</u>, No. CV 10-6277, 2010 WL 5140855 at *3 (C.D.Cal. 2010) ("dismissal of pleadings on grounds that likelihood of confusion is impossible from the face of a complaint … would [] be 'highly unusual'").

**B. The First Amendment Does Not Entitle Defendants To Use A Confusingly Similar and Trademarked Book Title For Their Movie Title And Does Not <u>Entitle Defendants To Use Any Mark with Intent To Mislead Consumers</u>**

Defendants contend that showing a "likelihood of confusion" (as Plaintiffs do) from Defendants' unauthorized use of Plaintiffs' trademarked Book title as the title of their Movie is insufficient to state a claim for trademark infringement. Defendants' contend that, pursuant to <u>Rogers v. Grimaldi</u>, 875 F.2d 994 (2d Cir. 1989), as followed by the Ninth Circuit in <u>Mattel, Inc. v. MCA Records</u>, 296 F.3d 894 (9th Cir. 2002), the First Amendment further requires Plaintiffs to show that (i) "the title has no artistic relevance to [Defendants'] underlying work [*i.e.,* the Movie] whatsoever," *or* (ii) "the title explicitly misleads as to the source or the content of the work."

However, there is no such requirement in this case, because the "Rogers test" does not apply to cases of two confusingly similar titles of two expressive works, and defendants are never entitled to use a mark to confuse and mislead consumers. Furthermore, assuming *arguendo* and contrary to law that the <u>Rogers</u> test does apply, the test is satisfied here, at least at the pleading stage, where Plaintiffs have alleged that Defendants used Plaintiffs' mark to intentionally confuse and mislead consumers.

### 1. *The Rogers Test Does Not Apply To Cases of Two Confusingly Similar Titles In Two Expressive Works, Particularly Where Defendants Intended To Mislead Consumers*

Upon setting out its test as a "limiting construction" for the application of the Lanham Act to expressive works, the Second Circuit was quick and clear to set out the

limits to that construction. The <u>Rogers</u> Court stated: "This limiting construction would not apply to misleading titles that were confusingly similar to other titles.  The public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles." 875 F.2d at 999, n.5.  It elaborated:

> "Poetic license is not without limits. The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product. <u>Thus, it is well established that where the title of a movie or a book has acquired secondary meaning … the holder of the rights to that title may prevent the use of the same or confusingly similar titles by other authors.</u> Indeed, it would be ironic if, in the name of the First Amendment, courts did not recognize the right of authors to protect titles of their creative work against infringement by other authors." (Emphasis added) <u>Id.</u> at 999

In <u>Kiedis</u>, <u>supra</u>, at *3-5 (C.D.Cal. Feb 19, 2008), this Court denied a motion to dismiss predicated on <u>Rogers</u> in respect of a Lanham Act claim brought by the Red Hot Chili Peppers against Showtime for using the title "Californication" for a TV show, which was the very same title of the band's hit song.  This Court stated:

> "Expressive works are not immune from liability under the Lanham Act; on the contrary, … artistic works are commodities sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern. … In *MCA*, the Ninth Circuit discussed *Rogers* at length, expressly agreed with the Second Circuit's analysis in that case, and adopted the *Rogers* standard as its own…. Defendants acknowledge that the Ninth Circuit adopted this test from the Second Circuit's opinion in Rogers but ignore the fact that *Rogers* exempted works with 'confusingly similar' titles from this test. … [U]nder Defendants' interpretation of *MCA* there would be nothing to restrict an author

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

from using the exact title of someone else's earlier work as the title of a new work, so long as the words in that title had some relevance to the content of the new work. …  The better reading of the cases, however, suggests that when the Ninth Circuit is faced with a trademark case in which two artistic works with confusingly similar titles are at issue, the court will make clear that when it adopted the reasoning of *Rogers*, it adopted all of *Rogers* and not just the part that was relevant to the decision in *MCA*.  [In this type of trademark case] the decision [is] best made within the framework of the standard 'likelihood of confusion' facts used for decades in the Ninth Circuit."

See also Morgan Creek, supra, at * 7 (C.D.Cal. Oct. 28, 1991) (only the likelihood of confusion test applies to cases of two confusingly similar titles of two expressive work"); but see CI Games, supra, (C.D.Cal. Oct. 25, 2016) at *4 ("this Court is convinced that … the *Rogers* test is applicable to a case involving confusingly similar titles")

In the nearly 20 years that the Ninth Circuit has followed Rogers, the Court has never stated that it rejects the footnote in Rogers that excludes from its test for expressive works cases of two confusingly similar titles.  But see Twentieth Century Fox Television v. Empire Distribution, Inc., 875 Fed.3d, 1192 (9th Cir. 2017) (court observes in dicta that "the exception the footnote [in Rogers] suggests may be ill-advised or unnecessary"). On the eight occasions that the Court has applied Rogers, (including in Empire) it had never done so where a plaintiff claiming a protectable trademark in the title of his expressive work was suing a defendant for unauthorized use of that title (or a confusingly similar title) in his expressive work – until doing so for the first time last December in Dr. Seuss Enterprises, L.P v. ComicMix, LLC, 983 F.3d 443 (9th Cir. 2020).  But even then, the Court did not expressly address the issue (or mention footnote 5), because apparently Rogers' application was not put in issue.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1    Significantly, in <u>Dr. Seuss</u>, plaintiff did not allege, as here, that the defendant
2 had intentionally used plaintiff's book title to mislead the public into associating the
3 plaintiff's work with the defendant's. There has never been a Ninth Circuit case that
4 applied <u>Rogers</u> to a Lanham Act claim involving two confusingly similar titles where
5 the likelihood of confusion was actually intended.  That is because <u>Rogers</u> is intended
6 to accommodate the First Amendment rights of trademark defendants with regard to
7 their expressive works but not where defendants have intended to mislead consumers,
8 because intentionally deceptive speech is never entitled to First Amendment
9 protection. We have many laws that proscribe deceitful speech, *e.g.,* fraud, perjury,
10 defamation or misrepresentation, which exclude intentionally deceptive speech from
11 the First Amendment's protection.  There is no indication in the Lanham Act that it
12 was intended to be construed or applied any differently or intended to extend First
13 Amendment protection to intentionally deceptive speech by carving out intentionally
14 deceptive titles from trademark infringement.

15    This Court spoke directly to this point in <u>Morgan Creek</u>, <u>supra</u>, at *5:

16       "False or misleading speech is not protected [by the First
17       Amendment]. The traditional likelihood-of-confusion theory will
18       usually insulate the trademark infringement remedy from First
19       Amendment challenge, because, before such remedies can
20       successfully be invoked, the court must find a likelihood of
21       confusion, mistake or deception.  And the Supreme Court has held
22       that 'the Government may ban forms of communication more likely
23       to deceive the public than to inform it.'" (internal citations omitted).

24 <u>See also</u> <u>Rogers</u>, <u>supra</u>, at 997 ("[t]he government may ban forms of communication
25 more likely to deceive the public than inform it." (citing to *Central Hudson Gas &*
26 *Electric v. Public Service Commission*, 447 U.S. 557, (1980)).

27    In justifying its "limiting construction" of the Lanham Act in cases of
28 expressive works, <u>Rogers</u>, <u>supra</u>, at 999, observes that courts may properly narrow a

federal statute's construction insofar as necessary to "avoid serious constitutional problems unless such construction is plainly contrary to the intent of Congress." However, construing the Lanham Act so narrowly as to apply <u>Rogers</u> to this case does not do that. There is no "constitutional problem" in applying the Act here, as written (and conventionally applied under <u>Sleekcraft</u>, rather than under <u>Rogers</u>), because this case alleges intentionally deceptive speech by an infringer – and such speech is not protected by the Constitution. Accordingly, Congress can make such speech unlawful, which it has in the Lanham Act.

This case alleges intentionally deceptive speech with regard to Defendants' use of a mark as a competing title with another expressive work, and the Lanham Act, at its core, protects consumers from such deception.  So bluepenciling the Act to allow for such would be contrary to Congress' intent.  This is entirely different from a court reading the Lanham Act, as <u>Rogers</u> has, to find that, by reason of the First Amendment, certain unauthorized but non-confusingly similar and non-competing uses of a mark inside expressive works are still lawful.  <u>See</u> <u>Mattel v. MCA Records</u>, <u>supra</u>, at 900 ("A trademark informs people that trademarked products come from the same source. Limited to this core purpose—avoiding confusion in the marketplace—a trademark owner's property rights play well with the First Amendment. Whatever first amendment rights you may have in calling the brew you make in your bathtub 'Pepsi' are easily outweighed by the buyer's interest in not being fooled into buying it").

In some circumstances, in order to salvage the constitutional parts of legislation that includes other provisions deemed unconstitutional, courts may sever the elements that violate the Constitution and sustain the rest, if what remains would still be consistent with legislative intent.  <u>Randall v. Sorrel</u>, 548 U.S. 230, 262 (2006). But the courts cannot bluepencil statutes by adding provisions to them to make them conform to what are perceived as First Amendment requirements, and adding the <u>Rogers</u> test to the Lanham Act in the circumstances here, as Defendants urge, would impermissibly do that.  The Act, by its terms, requires a plaintiff to show only a "false description or

14

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

representation" of his mark, which the courts assess by its "likelihood of confusion" to consumers. The Act does not impose the additional burden of showing that a defendant who *intends* to mislead consumers as to the source or the content of his work by using a title confusingly similar to a plaintiff's trademarked title is doing so with a title that is not "artistically relevant" to his work or has done so "explicitly" with some affirmative statement falsely associating his work with the plaintiff's work. If Congress had intended to qualify the Lanham Act in such a drastic manner, it would have done so; there is no basis to conclude that judicially rewriting the Act to that effect would be consistent with the legislative intent. Defendants' invitation to rewrite the Lanham Act to shield them from intentional deception should be declined. If the Court determines that the Act, absent the additional requirements of the <u>Rogers</u> test, denies a defendant his First Amendment rights, even when he has used a plaintiff's mark to intentionally confuse and mislead consumers, then the appropriate judicial remedy is to strike the Act as unconstitutional, not to rewrite or add to the Act.

In sum: Where a defendant uses the title of a plaintiff's expressive work as a "confusingly similar title" for his own expressive work, applicability of the <u>Rogers</u> test is expressly rejected by <u>Rogers</u> itself. It would be especially inappropriate to apply <u>Rogers</u> in a case such as this, where the Defendants here are alleged to have misappropriated Plaintiffs' title with the actual intention of confusing and deceiving consumers, because such conduct is not shielded by the First Amendment and allowing it would be contrary to Congress' intent in the Lanham Act. The Ninth Circuit has never applied <u>Rogers</u> to such a case, and it would amount to an impermissible rewriting of the Lanham Act to do so. Accordingly, this Court should not apply <u>Rogers</u> here, and Plaintiffs' pleading should be sustained on the basis of likelihood of confusion.

## 2. *If Rogers Does Apply, Plaintiffs Satisfy Prong Two of The Test, Because They Allege Defendants Used Plaintiffs' Mark to Intentionally Confuse And Mislead Consumers And Used It*

*In The Same Way As Plaintiffs, Without Any Modification*

The <u>Rogers</u> test is a two-prong test in the alternative – *i.e.,* a plaintiff can satisfy <u>Rogers</u> (at least at the pleading stage) by alleging facts from which it can reasonably inferred that either (i) "the title has no artistic relevance to the underlying work whatsoever," *or* (ii) "the title explicitly misleads as to the source or the content of the work." <u>Rogers</u>, <u>supra</u>, at 999.  Here, assuming *arguendo* and contrary to law that the <u>Rogers</u> test applies, Plaintiffs have satisfied the second alternative.

As shown below, the authorities in this circuit make clear that the second prong of <u>Rogers</u> does not require that a defendant explicitly state within his expressive work that the plaintiff or plaintiff's work is associated in some way with the defendant's work. The second prong *may be* satisfied by other factors that can raise a triable issue of fact as to whether the use arises to the level of "explicitly misleading," including, most notably (a) if the defendant used the mark in same way as the plaintiff, and (b) if the defendant used the mark without any change in its text or any other adornment or modification. Moreover, prong two *is* satisfied, as a matter of law, if defendants used the mark to intentionally confuse and mislead consumers.  All of this is alleged here.

**(a) Defendants Used Plaintiffs' Mark In The Very Same Way As Plaintiffs**

The Ninth Circuit has most extensively addressed the second prong of the <u>Rogers</u> test in <u>Gordon v. Drape Creative, Inc.</u>, 909 F.3d 257 (9th Cir. 2018) – a case not mentioned by Defendants. There, the plaintiff alleged that its trademarked slogan had been infringed by the defendant's unauthorized use of the slogan in its greeting cards (which the Court found qualified as an expressive work).  The Court ruled that the <u>Rogers</u> test was applicable but still reversed the trial court's dismissal, finding that the plaintiffs had raised a triable issue of fact as to the second prong of the test.

The Court expressly rejected the argument (made by Defendants here, at Mem. 14-15) that "mere use of a mark is not sufficient to establish explicit deception" under the second prong of <u>Rogers</u>.  The <u>Gordon</u> Court stated (at 271):  "In some instances, the use of a mark alone may explicitly mislead consumers about a product's source if

16

a consumer would ordinarily identify the source by the mark itself." The Court also rejected the argument (made by Defendants here, at Def. Mem. 17) that, under prong two of <u>Rogers</u>, a plaintiff must show that defendant's expressive work "explicitly indicates that [plaintiff] has endorsed, approved or commented on the [work] in which his mark appears." The Court in <u>Gordon</u>, <u>supra</u>, at 269, held: "We reject the district court's rigid requirement that, to be explicitly misleading, the defendant must make an affirmative statement of the plaintiff's sponsorship or endorsement.  Such a statement may be sufficient to show that the use of a mark is explicitly misleading, but it is not a prerequisite." The defendant did not make such an affirmative statement in <u>Gordon</u>, but the Court still found a triable issue of fact as to whether prong two was satisfied.

The Court highlighted factors regarding a defendant's use of a mark that could satisfy prong two of <u>Rogers</u>, even in the absence of any explicit reference to the plaintiff or his work in the defendant's work.  The first of these factors is whether the defendant has used the mark in the "same way" that the plaintiff has. The Court stated:

> "A more relevant consideration [than whether the defendant, *i.e.,* the junior user, 'merely used' the mark] is the degree to which the junior user used the mark in the same way as the senior user.  In the cases in which we have applied the *Rogers* test, the junior user has employed the mark in a different context – often in an entirely different market – than the senior user.  In *MCA Records* and *Walking Mountain*, for example, Mattel's Barbie mark was used in a song and a series of photos.  In *E.S.S.* the mark of a strip club was used in a video game.  And in *Twentieth Century Fox*, the mark of a record label was used in a television show.  In each of these cases, the senior user and junior user used the mark in different ways.... But had the junior user in these cases used the mark in the same way as the senior user … such identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers*

condemns. *Rogers* itself makes this point by noting that 'misleading titles that are confusingly similar to other titles can be explicitly misleading, regardless of artistic relevance.  Indeed, the potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions.  Were we to reflexively apply *Rogers's* second prong in this circumstance, an artist who uses a trademark to identify the source of his or her product would be at a significant disadvantage in warding off infringement by another artist, merely because the product being created by the other artist is also 'art.'  That would turn trademark law on its head." <u>Gordon</u>, <u>supra</u>, at 270.

Here, the "GRINGO" Plaintiffs allege that Defendants used the "GRINGO" mark in the very same way as Plaintiffs – as the title to an expressive work in the entertainment sector and, in particular, to refer to the same sort of protagonist in their expressive work, a non-Hispanic out of his element south of the border.  Furthermore, Defendants used the mark primarily in the very same market as the Plaintiffs – the Amazon consumer market – with Amazon branding. This is exactly the kind of copycat usage that, under <u>Gordon</u>, can raise a triable issue of fact as to prong two.

**(b) Defendants Used Plaintiffs' Mark As The Title of Their Movie Without Any Change To Its Text Or Any Adornment Or Modification**

A second factor that the Ninth Circuit identified in <u>Gordon</u> that could raise a triable issue of fact as to prong two is whether the defendant "used the mark without any other text" and "largely just pasted [plaintiff's] mark" onto his own work.  <u>Id.</u> at 272.  The Court held that a mere duplication of the mark "as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the [defendant], may reflect nothing more than an effort to induce the sale of goods or services by confusion." <u>Id.</u> at 271.  The Court held that this could satisfy prong two of <u>Rogers</u>.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1   Again, that is precisely what is alleged here. Defendants added nothing to the

2   text of the "GRINGO" mark, changed nothing on it, and neither adorned nor modified

3   it; they used the very same word, in the same all capital letters and in essentially the

4   same font that Plaintiffs used. They just "pasted [Plaintiffs]' mark" onto the Movie to

5   create a false association with the Book and confuse consumers as to the source and/or

6   content of the Movie to induce consumers familiar with the Book to see the Movie.

7   Dissimilarly, in Punchbowl, Inc. v. AJ Press LLC, 2:21-cv-03010-SVW-MAR,

8   2021 WL 3356848 at *3,4,6 (C.D.Cal. July 16, 2021), this Court found prong two was

9   not satisfied and granted dismissal, because, unlike Gordon, where the defendant had

10  used plaintiff's mark "without any other text" – as is also the case here – the defendant

11  in Punchbowl had consistently added its own text to the mark.  Also in Punchbowl,

12  and unlike in Gordon (and unlike here), (i) the plaintiff and defendant "operated in

13  entirely different markets;" (ii) the defendant used the mark in a series of publications

14  that had a history of disclosing its founders in an explicit manner; and (iii) most

15  importantly, the plaintiff did not allege that the defendants had intended to cause

16  consumer confusion by their use of plaintiff's mark. See also Dr. Seuss, supra, at 463

17  (Court rejected plaintiff's prong two argument, on summary judgment, because,

18  unlike in Gordon (and unlike here), defendant's work expressly stated it was "not

19  associated with or endorsed by the [plaintiff]").

20  Defendants suggest that, because the "Movie does not contain the nine-word

21  subtitle used by the Book" ("My Life On the Edge As An International Fugitive"),

22  they have not infringed (Def. Mem. 15:15-16).  But Plaintiffs claim a trademark in the

23  title "GRINGO," not in the smaller, collateral text that Defendants characterize as the

24  subtitle. Will Defendants call their next movie "Pinocchio" and claim immunity from

25  trademark law because they did not include Pinocchio's subtitle? It is the "GRINGO"

26  trademark that is prominently displayed on the Book's cover that acquired secondary

27  meaning which entitles it to trademark protection; any collateral text is immaterial.

28  See Sleekcraft, supra, at 351 (smaller "housemark" "AMF" accompanied claimant's

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

mark but not infringer's mark, which was a "difference insufficient to overcome the overall visual similarity"; "emphasis" was on the larger "Slickcraft," which was "the more conspicuous mark and serve[d] to indicate the source or origin to the public").

### (c) Defendants Used Plaintiffs' Mark To Intentionally Confuse And Mislead Consumers

The Court in <u>Gordon</u> emphasized that in assessing prong two, the "focus [is] on the nature of the junior user's behavior rather than on the impact of the use." <u>Id</u>. at 269.  In this regard, the Court pointed to evidence that the "defendants used the mark knowing that consumers [would] rely" on it in a way that would cause confusion.  <u>Id</u>. at 271. The law is clear that a defendant's intentional use of a mark to deceive consumers, as Plaintiffs allege here, satisfies prong two of <u>Rogers</u> on its own.

<u>CI Games</u>, <u>supra</u>, 2016 WL 9185391 (C.D.Cal. Oct. 25, 2016) is especially on point in this regard. This Court determined that the <u>Rogers</u> test was applicable but still denied defendant's motion to dismiss, finding that plaintiffs had satisfied prong two of the test by alleging that defendants had "intentionally" given their movie a title similar to the title of plaintiff's video game in order to cause confusion among consumers as to the movie's association with the video game.  This Court held that, as a matter of law, Defendants' intent made the title "explicitly misleading" for purposes of the <u>Rogers</u> test. The Court stressed that cases of two confusingly similar titles typically warrant greater consideration of trademark protection than other cases involving expressive works but that a defendant's intent to confuse consumers in such a case actually *entitles* plaintiff to trademark protection.  The <u>CI Games</u> Court held:

> "[T]he Court declines to find as a matter of law that the Defendants' use of the title 'Sniper: Ghost Shooter' did not explicitly mislead consumers into thinking that the source or content of the movie was the same as the 'Sniper: Ghost Warrior' video game. As a threshold matter, the Complaint alleges reasons to believe why consumers would be led to believe that the movie was produced by the creators

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

of the game. <u>Although it would not satisfy the *Rogers* test to simply allege that consumers are likely to be confused as to the source of the work, the Plaintiff further alleges that the Defendants have intentionally created a movie title that may lead consumers to believe that the movie was either based on the game or created by the same producers as the game. This Court now finds that intentionally creating a title that could be confused with the title of another expressive work would be 'explicitly misleading' for the purposes of the *Rogers* test.</u> This conclusion is supported by the fact that such an act by Defendants would heavily tip the balancing test in favor of preventing customer confusion, because <u>the free expression interest in allowing Defendants to use a purposefully misleading title would be extremely limited. As a result, if the Defendants' did intentionally create such confusion, they would not be able to claim First Amendment protection, because they would fail the second prong of the *Rogers* test. … [T]he Court finds that the analysis of whether the First Amendment protects the actions of the Defendants is better conducted at the summary judgment stage.</u> For the purposes of this Motion to Dismiss, the Plaintiff has presented sufficient factual allegations which, if taken as true, lead to the plausible inference that the Defendants explicitly misled consumers as to the content or source of their movie." at *9 (Emphasis added).

In <u>Dita, Inc. v. Mendez</u>, <u>supra</u>, 2010 WL 5140855 at * 3 (C.D.Cal. Dec. 14, 2010), this Court held that <u>Rogers</u> did not apply but, in the alternative, denied the motion to dismiss under prong two of <u>Rogers</u>, because defendant had acted with intent to cause a likelihood of consumer confusion:

1
2
3
4
5
6
7
8
9
10

"However, even assuming *arguendo* that the *Rogers* test is applicable under the circumstances of this case, Defendant's claim cannot prevail on a motion to dismiss in light of specific allegations asserted in the Complaint. <u>Not only does the Complaint allege that Defendant's use of the mark is likely to cause consumer confusion, it asserts that Defendant actually intended to mislead the public as to the source or content of the work.  Such allegations expressly negate the second prong of the *Rogers* test.</u> … [Thus,] the Court rejects Defendant's argument that the Complaint should be dismissed on First Amendment grounds." (Emphasis added).

11
12
13
14
15

See also Electronic Arts, Inc. v. Textron Inc., No. C 12–00118 WHA., 2012 WL 3042668 (N.D.Cal. July 25, 2012) (choosing not to rule on whether *Rogers* applied but holding, in any event, that the motion to dismiss still failed on prong two, because "the complaint alleges more than 'mere use'… It alleges … EA intended consumer confusion. On a motion to dismiss, this is sufficient to defeat this prong of *Rogers*").

16
17
18
19
20
21
22
23
24
25
26
27
28

In sum: The authorities make clear what should be obvious – that defendants who act to intentionally mislead are not entitled to a First Amendment shield from a Lanham Act plaintiff's entitlement to trademark protection.  Here Plaintiffs allege that Defendants changed the title of their Movie to "GRINGO" with the specific intent to cause consumer confusion (and among Amazon consumers in particular) as to the Movie's association with the Book, so as to capitalize on the success of the Book. (Comp. ¶¶ 28-29). These allegations of intent are sufficient to satisfy prong two of Rogers as a matter of law. Additionally, Plaintiffs' allege that Defendants used Plaintiffs' mark to mislead consumers by using it in the very same way as Plaintiffs and that Defendants used it as the "centerpiece" of their work (*i.e.,* the title of their Movie) without any change to the text of the mark.  These allegations can also satisfy prong two (and at least raise a triable issue of fact) without the need for an affirmative statement by Defendants that their work was associated with the Plaintiffs' work.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**C.  Plaintiffs Have Adequately Pled Their UCL Claim**

Defendants contend that Plaintiffs lack standing to sue under the UCL, because they fail to allege "a causal connection between the unfair, unlawful or fraudulent business practice [they identify] and the economic injury [they] purport to have suffered." That contention, however, flies in the face of the pleading.

As Defendants acknowledge (Def. Mem. at 19), Plaintiffs allege they lost book sales and lost the opportunity to sell the film rights to the Book (in addition to a loss of goodwill) "as a direct result" of Defendants' unfair and unlawful business practice in infringing Plaintiffs' trademark in the "GRINGO" title. (Comp ¶¶ 46, 50). Plaintiffs allege they lost book sales, because Defendants' misappropriation of the "GRINGO" title caused "widespread confusion among the public … as to the relationship between the Book and the Movie and … the mistaken assumption among many that the Movie is an adaptation of the Book" (Id. at ¶ 31). This led "some people who have seen the Movie to forego purchasing the Book [on the mistaken belief] they had already seen the Book in the Movie." (Id. at ¶33). Others who were led to believe the Movie told the story of the Book have not purchased the Book, because they found the Movie unappealing, or because it received poor reviews. (Id. at ¶ 34).  Plaintiff allege they lost the opportunity to sell the film rights to the Book, because investors "who actively showed interest in the film rights to the Book prior to the release of the Movie … lost interest following the Movie's release, as they believed consumers would continue to assume that the Film was the adaptation of the Book." (Id. at ¶ 31-32). These allegations of loss causation are more than sufficient to confer standing.

Defendants also contend that Plaintiffs' UCL claim is deficient "under the 'unfair' prong" of the UCL, because Plaintiffs fail to allege an antitrust violation or an act that "otherwise significantly threatens or harms competition." However, a claim for "unfair" competition under Section 17200 can arise from any of "three varieties of unfair competition" – conduct that is "unlawful," "unfair" or "fraudulent." People ex. rel. Lockyer v. Fremont Life Ins. Co., 104 Cal. App. 4th 508, 515 (2002). A claim

based on "unlawful" conduct can be based on a business practice that is unlawful under a federal civil statute.  See Shroyer v. New Cingular Wireless Services, 606 F. 3d 1035, 1044 (9th Cir. 2010).  Plaintiffs' claim is properly based on conduct that is unlawful under the Lanham Act. See Dita, supra, at *6 (C.D.Cal. 2010) ("Cal. Bus. & Prof.Code § 17200 prohibits 'unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue or misleading advertising.' To state a claim under this provision, a plaintiff need only show that members of the public are likely to be deceived by the defendant's business practice or advertising"). Accordingly, Plaintiffs have stated a cognizable claim under the UCL.

In assessing the sufficiency of Plaintiffs' UCL claim, it also bears emphasis that California state courts do not construe § 17200 as requiring compliance with the Rogers test in claims for trademark infringement regarding expressive works generally or, more particularly, in claims regarding "misleading titles that are confusingly similar to other titles." Winchester Mystery House, LLC v. Global Asylum, Inc., 210 Cal. App. 4th 579, 594 (Cal. App. 2012). Likelihood of confusion remains the applicable legal standard in California for these state law claims.

**D.  Plaintiffs Have Not Engaged In Impermissible Group Pleading**

Defendants contend that Plaintiffs have engaged in "impermissible group pleading," because they "do not differentiate as to the actions of each Defendant." (Def. Mem. at 7:25).  However, the law is clear that it is entirely permissible for a plaintiff to allege the same conduct against all defendants where, as here, they are engaged in a common enterprise and, by virtue of their holding the same positions, they all had the same responsibilities. The Ninth Circuit has stated in this regard: "There is no flaw in a pleading where … collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." Swoben v. United Healthcare, 848 F.3d 1161, 1184 (9th Cir. 2016). Defendants rely on several district court cases, within this Circuit and elsewhere, for the erroneous proposition that Plaintiffs have engaged in impermissible group

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

pleading, but all of those decisions precede the Ninth Circuit authority to the contrary cited above, and all of those cases involved Defendants that were unassociated entities or individuals who did not hold the same title.

Plaintiffs here have identified each of the Defendants by the title that each had in the allegedly infringing Movie. Ten of the eleven defendants are alleged to have been producers of the Movie, and the eleventh is alleged to be the Movie's distributor. Plaintiffs then specifically allege what the Defendants did collectively, such that each is liable for the infringement by virtue of their position that they held. The Lanham Act makes liable anyone who "uses in commerce" the infringing item, and that is what all producers and distributors do – they put movies in commerce. Insofar as the evidence shows that any particular defendant played more or less of a role in doing that than their title indicates, some Defendants may bear less, or conceivably no, responsibility, and Plaintiffs will amend or dismiss accordingly. But at the pleading stage, where several persons and/or entities have the exact same title, it is not possible to know whether or which of their actions may be differentiated; thus, Plaintiffs can and need to plead in "collective allegations." Id.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Jonah A. Grossbardt*
JONAH A. GROSSBARDT, **SRIPLAW**

JOHN A. SQUIRES (*Pro Hac Vice* Pending)
SPENCER DREIER (*Pro Hac Vice*)
**Dilworth Paxson LLP**
*Attorneys for Plaintiffs Daniel E. Davis, Peter Conti, and Gringo Holdings, LLC.*